UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ANTHONY J. GENOVA,

                           Plaintiff,             **REPORT AND**
                                                          **RECOMMENDATION**
             -against-                    CV 17-4959 (SJF)(AYS)

THE COUNTY OF NASSAU and
NASSAU COUNTY COMPTROLLER,
GEORGE MARAGOS,

                           Defendants.
-------------------------------------------------------------X

**ANNE Y. SHIELDS, United States Magistrate Judge:**

This is an employment discrimination case brought pursuant to the Americans with Disabilities Act, 42 U.S.C § 12112(a). Presently before the Court, on referral from the Honorable Sandra J. Feuerstein for report and recommendation, is Defendants' motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56. For the following reasons, this Court respectfully recommends that the motion be granted.

## FACTUAL BACKGROUND

I.    Basis of Facts Recited Herein

In support of their motion, Defendants have properly filed a statement of facts in accord with Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Rule 56.1"). Defendants' statement properly cites to facts supported by admissible evidence. As required by Rule 56.1, Plaintiff (the party opposing summary judgment) is required to submit his own counter-statement of facts, setting forth areas of agreement, as well as those as to which there is dispute. As further required by Rule 56.1, each statement set forth by the moving party is "deemed admitted for purposes of the motion [for

1

summary judgment] unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Loc. Civ. R. 56.1(c).

Plaintiff has not submitted a Rule 56.1 counter-statement. Instead, he submits only his own affidavit and the sworn statements of three individuals. None of the documents submitted by Plaintiff correspond to Defendants' Rule 56.1 Statement. Because Plaintiff has failed to comply with Rule 56.1, the relevant facts, as set forth below, are deemed admitted by Plaintiff, and are therefore taken solely from Defendants' Rule 56.1 Statement. See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Nassar Family Irrevocable Trust v. United States, Nos. 13 Civ. 5680, 13 Civ. 8174, 2016 WL 5793737, at *1 n.2 (S.D.N.Y. Sept. 30, 2016) ("Because Nassar has failed to file a response [to Defendant's Rule 56.1 Statement], all facts set forth in the Government's statement are deemed admitted in deciding the instant motion."); Luizzi v. Pro Transport Inc., No. 02 CV 5388, 2009 WL 252076, at * 2 (E.D.N.Y. Feb. 2, 2009) ("Where the party opposing a motion for summary judgment fails to submit a proper counter-statement of material facts, controverting the moving party's statement, courts have deemed the moving party's statement of facts to be admitted and have granted summary judgment in favor of the moving party on the basis of the uncontroverted facts.").

II.   Facts

   The Parties

Plaintiff is an individual who was employed by the Defendant County of Nassau ("Nassau" or the "County") from December 15, 2014 until his termination on March 14, 2016. Nassau is a municipal corporation located in the State of New York. Defendants' Rule 56.1

Statement, appearing as Docket Entry ("DE") [21-1] herein ¶ 1.[1] The Office of the Comptroller is a division of the County, which serves as the fiscal "watch dog" for the County's annual budget of $2.6 billion. DE [21-1] at ¶ 2. The Comptroller and its staff monitor the County's budget, and conduct audits to ensure that there is no waste and abuse. DE [21-1] at ¶ 3. The Comptroller's office also issues reports on financial issues that significantly impact the County's financial health and operations, and is responsible for the administration of the County's payroll and employee health benefits. DE [21-1] at ¶ 4. Defendant George Maragos ("Maragos") was elected to the position of Comptroller of the County on or about November of 2009. He took office on January 1, 2010. Maragos was elected to two consecutive four-year terms, serving as Comptroller until on or about December 31, 2018. DE [21-1] at ¶ 5. As Comptroller, Maragos was responsible for hiring employees for the Office of the Comptroller. DE [21-1] at ¶ 6.

    B.    <u>Plaintiff's Employment with the County</u>

After a lengthy interview process, Maragos hired Plaintiff as an Inspector with the Office of Comptroller. DE [21-1] at ¶ 7. At no point during the interview process did Plaintiff inform Maragos that he suffered from Crohn's disease. DE [21-1] at ¶ 11. Nor did he seek any sort of accommodation. DE [21-1] at ¶ 12. Plaintiff's first day of work with the County was December 15, 2014. DE [21-1] at ¶ 8. Plaintiff was an at-will employee. DE [21-1] at ¶ 10. During his employment, Plaintiff never requested any accommodation. Nor did he ever make any complaints of a hostile work environment. DE [21-1] at ¶ 17. When Plaintiff was hospitalized in

---

[1] Since there is no dispute as to material facts, the Court cites only to Defendants' Rule 56.1 statement. Additionally, unless otherwise noted, the Court does not cite to deposition testimony or other documents underlying those facts.

3

July of 2015 for his Crohn's disease, Maragos expressed sadness and instructed his staff to do all they could for Plaintiff within the County's policies. DE [21-1] at ¶ 15.

After he was hired, Plaintiff was given the responsibility of preparing two reports for the Comptroller; an Abandoned Home Study (the "Abandoned Home Report") and a Surplus Property Study (the "Surplus Property Report") (collectively "the Reports"). DE [21-1] at ¶18. Defendants have submitted a series of emails between Maragos and Plaintiff with respect to Plaintiff's work on the Reports. See Exhibit F to Defendants' Rule 56.1 Statement, DE [21-3] at 42-56. The Abandoned House Report was submitted to Maragos on June 16, 2015. DE [21-3] Exhibit F at 42. The next day, Maragos sent an email to Plaintiff stating that "the logic [of the report] makes no sense to me and the conclusions are inconsistent with the data." Id.

Plaintiff's Surplus Property Report, submitted to Maragos on July 10, 2015, generated similar negative comments. Three days later after its submission, Maragos emailed his comments to Plaintiff. On July 31, 2015, Plaintiff sent Maragos a revision of the Surplus Property Report. DE [21-3] Exhibit F at 45. On August 5, 2015, Plaintiff sent Maragos additional data with respect to his report. On that same day, Maragos sent Plaintiff an email stating that "not much progress" had been made" and that the report "remains very skimpy on details . . . ." DE [21-3] Exhibit F at 46. In an email dated August 6, 2015, Plaintiff promised to address Maragos's concerns. DE [21-3] Exhibit F at 48. On the morning of August 14, 2015, Maragos sent Plaintiff two emails. First, Maragos told Plaintiff that they were "continuously falling behind" and that he needed "a comprehensive report without delay." DE [21-3] Exhibit F at 50. He also directed Plaintiff to "[p]lease address issues with report in a professional manner." He stated that all "work and conclusions must be logically explained and supported. Please don't qualify limited items." DE [21-3] Exhibit F at 52. Later that day, Plaintiff emailed Maragos and referenced a

4

meeting with a member of the administration, agreeing that "they" are falling behind. DE [21-3] Exhibit F at 54. In an email response dated August 16, 2015, Maragos stated that the administration's plans were not relevant. Plaintiff was told not to waste his time. The scope of Plaintiff's duties was reiterated, as was the fact that Maragos had previously discussed this matter with Plaintiff. DE [21-3] Exhibit F at 54. Plaintiff was "terminated for poor work performance on or about March 14, 2016." DE [21-1] at ¶ 23.

    C.    <u>Plaintiff's Administrative Complaint</u>

On or about January 16, 2017, Plaintiff filed a charge of discrimination with the New York State Division of Human Rights alleging discrimination based upon disability (the "NYSDHR Complaint"). DE [21-3] Exhibit G. In his charge of discrimination Plaintiff stated that "he has always worked through his illness and except for brief periods of time when he required treatment, he always worked a full schedule." <u>Id.</u> He further stated that his Crohn's disease "did not in any way effect his employment or employment activities." <u>Id.</u> Plaintiff's NYSDHR Complaint did not allege that he required, requested, or was denied any accommodation. DE [21-1] at ¶¶ 27-28. Nor did that complaint allege the filing of any complaints with the County's Human Resources Department regarding any accommodations, or that Plaintiff was subject to a hostile environment. DE [21-1] at ¶ 29.[2]

---

[2] In addition to the NYSDHR complaint there is also before the Court a charge of discrimination filed by Plaintiff with the EEOC dated February 1, 2017. That charge alleges both age and disability discrimination. Here, Plaintiff alleges only discrimination based upon disability.

5

    D.    <u>Plaintiff's Complaint Herein</u>

Plaintiff alleges disability discrimination based upon the fact that he has Crohn's disease. In his complaint, he alleges that Maragos knew of Plaintiff's disability prior to his employment, and that Maragos assured Plaintiff that his Crohn's disease presented no problem. DE [1] at ¶ 3. Plaintiff states that he was terminated based upon the "feigned excuse" that his work was deficient. DE [1] at ¶ 8. He disagrees with Defendants' assessment of his work product, and states that his work and experience were "far superior" to that of the Comptroller, or any of his assistants. DE [1] at ¶ 14. Plaintiff concludes that he was terminated "obviously because of his infliction with Crohn's disease." DE [1] at ¶ 17.

III.    <u>The Motion for Summary Judgment</u>

    A.    <u>Defendants' Position</u>

Defendants seek summary judgment. First, it is argued that Plaintiff is not disabled within the meaning of the ADA. Even assuming disability, Defendants state that there was a valid non-discriminatory reason to terminate Plaintiff, and that he can show no issue that such reasons were a pretext for discrimination. Defendants also argue that Plaintiff never requested any accommodation or complained of a hostile environment.

    B.    <u>Plaintiff's Opposition</u>

In response to the motion, Plaintiff states that Maragos knew of his disability. Such knowledge is alleged to arise from a 2012 breakfast meeting during which Maragos is stated to have asked Plaintiff why he did not accompany his eggs with any form of meat. In response, Plaintiff alleges that he informed Maragos that he could not eat meat because of his Crohn's disease. Affidavit of Anthony Genova submitted in Opposition to Defendants' Motion for Summary Judgment Plaintiff ("Genova Aff.") DE [21-9] at 1-12 ¶ 2.

Plaintiff does not dispute that he never requested any accommodation. Nor does he argue that he ever made a complaint of a hostile environment. He makes clear that his theory of the case is only that he was terminated on account of his disability. He argues that it was not until after his termination that he discovered that Maragos "harbored a hostile feeling towards people who had any sickness of any kind . . . ." Memorandum in Opposition to Summary Judgment, DE [21-8] at 4.

Plaintiff has not, as described above, submitted a Rule 56.1 statement. Instead, he opposes Defendants' motion by submitting his own affidavit (referred to above) as well as a sworn letter from a co-worker, and the affidavits of two outside individuals. The sworn letter is submitted by Plaintiff's co-worker, Jostyn Hernandez ("Hernandez"). The two affidavits are submitted by Leon Sanchez ("Sanchez"), a real estate broker, and Martin H. Pollack, Esq., ("Pollack") a real estate attorney. See Exhibit E annexed to Genova Aff. (statements of Hernandez, Sanchez and Pollack). DE [21-9] at 49-53. The three non-party affidavits are presumably submitted in support of Plaintiff's burden to create an inference of discrimination as well as (if necessary) a showing that any reasons alleged by Defendants in support of Plaintiff's termination were a pretext for discrimination. The Court discusses those documents, to the extent necessary, in greater detail below.

DISCUSSION

I.     Legal Principles: Standards on Summary Judgment

Summary judgment is appropriately granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

7

In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted). "A fact is material if it 'might affect the outcome of the suit under the governing law[.]' " Baldwin v. EMI Feist Catalog, Inc., 805 F.3d 18, 25 (2d Cir. 2015) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

In reviewing the record to determine whether there is a genuine issue for trial, the court must "construe the evidence in the light most favorable to the non-moving party," Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay, 868 F.3d 104, 109 (2d Cir. 2017) (quotations, alterations and citation omitted). Thus, the Court must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Davis-Garett v. Urban Outfitters, Inc., 921 F.3d 30, 45 (2d Cir. 2019) (quotations and citation omitted).

"A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Pollard v. New York Methodist Hosp., 861 F.3d 374, 378 (2d Cir. 2017) (quoting Anderson, 477 U.S. at 248). The burden of showing an absence of genuine dispute as to a material fact lies with the moving party. CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP, 735 F.3d 114, 123 (2d Cir. 2013) (quotations, brackets and citation omitted). The nonmoving party can only defeat summary judgment "by adduc[ing] evidence on which the jury could reasonably find for that party." Lyons v. Lancer Ins. Co., 681 F.3d 50, 56 (2d Cir. 2012) (quotations, brackets and citation omitted).

" 'The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient' to defeat a summary judgment motion[,]" Fabrikant v. French, 691 F.3d 193,

8

205 (2d Cir. 2012) (quoting Anderson, 477 U.S. at 252), and "[a] court cannot credit a plaintiff's merely speculative or conclusory assertions." DiStiso v. Cook, 691 F.3d 226, 230 (2d Cir. 2012); see also Federal Trade Comm'n v. Moses, 913 F.3d 297, 305 (2d Cir. 2019) ("[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."); Flores v. United States, 885 F.3d 119, 122 (2d Cir. 2018) ("While we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the non-moving party, . . . conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment[.]" (quotations, alterations and citations omitted)).

While the Second Circuit often notes the caution to be employed when deciding whether to grant summary judgment in cases where an employer's intent is at issue, that court has noted similarly that "the salutary purposes of summary judgment – avoiding protracted and harassing trials – apply no less to discrimination cases than to . . . other areas of litigation." Tolbert v. Smith, 790 F.3d 427, 434 (2d Cir. 2015); see also Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008) (finding summary judgment appropriate to avoid "protracted, expensive and harassing trials"); Abdu–Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) (stating that it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases"); Kohutka v. Town of Hempstead, 994 F. Supp. 2d 305, 316 (E.D.N.Y. 2014).

With these standards in mind, the Court turns to discuss the legal principles to be applied and the merits of the motion.

II.     Plaintiff's Claim: Legal Principles

   A.     ADA Discrimination

The ADA makes it unlawful for employers to discriminate against employees on account of a disability. 42 U.S.C. § 12112(a). In order to establish a prima facie case of ADA discrimination, a plaintiff must show that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability. McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013); Scalercio-Isenberg v. Morgan Stanley Svcs. Grp, Inc., No. 19-6034, 2019 WL 6916099, at *5 (S.D.N.Y. Dec. 19, 2019); Bethea v. JP Morgan Chase & Co., No. 15-3544, 2019 WL 4805141, at * 6 (E.D.N.Y. Sept, 30, 2019).

Defendants' motion puts in issue the second and fourth elements of Plaintiff's prima facie case – whether Plaintiff suffered from a disability within the meaning of the ADA, and causation, i.e., whether his termination occurred because of that disability.

   i.     Disability

A disability under the ADA is defined as:

(A) a physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment . . . .

42 U.S.C. § 12102(1).

"Major life activities" include, among other things, caring for oneself, performing manual tasks, sitting, lifting, bending, concentrating, working, and thinking. 29 C.F.R. § 1630.2(i).

Whether an impairment "substantially limits" major life activities is to be "construed broadly," but "not every impairment will constitute a disability." Id. § 1630.2(j). While Congress expanded the definition of "substantially limits" when it amended the ADA in 2008, the amendments did not render the term "impairment" limitless. See B.C. v. Mount Vernon Sch. Dist., 837 F.3d 152, 160 n.7 (2d Cir. 2016) ("The ADA Amendments Act of 2008 . . ., while leaving untouched the general definition of 'disability' . . . did flesh out the previously undefined term 'major life activities.'"). Thus, the amendments did not diminish the importance of "distinguish[ing] between conditions that are impairments and physical, psychological, environmental, cultural and economic characteristics that are not impairments." Francis v. City of Meriden, 129 F.3d 281, 284 (2d Cir. 1997). Nonetheless, as the statute makes clear, the definition of disability under the ADA is to be "construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of" the statute. 42 U.S.C. at § 12102(4)(A).

      ii.      Causation: Adverse Employment Action Because of Disability

The ADA prohibits discrimination "on the basis of" disability. 42 U.S.C. § 12112(a). The Second Circuit has concluded that this language requires an ADA plaintiff to "prove that discrimination was the but-for cause of any adverse employment action." Natofsky v. City of New York, 921 F.3d 337, 349 (2d Cir. 2019). Thus, at the summary judgment stage, a plaintiff must present evidence from which a reasonable fact-finder could conclude that, but for the claimed disability, the adverse action would not have taken place. Id. at 351; Clay v. County of Suffolk, No. 17-2251, 2019 WL 4346446, at n.5 (E.D.N.Y. Sept. 11, 2019). The "but for" causation standard "is not equivalent to a requirement that age was the employer's only consideration," but, instead that the adverse employment "would not have occurred without it." Delaney v. Bank of Am. Corp., 766 F.3d 163, 168 (2d Cir. 2014).

11

Where a Defendant shows ample non-discriminatory evidence supporting an employment decision, it is appropriate to hold that no reasonable juror could find but-for causation. See e.g., Natofsky 921 F.3d at 351. Moreover, where a case presents nothing more than a mixed motive theory of discrimination, dismissal is required. Cf. Hooper v. PetSmart, Inc., No. 18-CV-1706, 2019 WL 4888651, at *5 (E.D.N.Y. Sept.r 30, 2019) (denying motion to amend ADEA claim requiring but-for causation where plaintiff's pleading show mixed motives for employment action).

      D.      The McDonnell-Douglas Framework

Courts apply the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to determine whether claims asserted pursuant to the ADA survive summary judgment. Clay v. County of Suffolk, No. 17-CV-2251, 2019 WL 4346446, at *10 (E.D.N.Y. Sept. 11, 2019); Patacca v. CSC Holdings, LLC., No. 16-0679, 2019 WL 1676001, at * 7 (E.D.N.Y. Apr. 17, 2019); Hernandez v. Int'l Shoppes, LLC, 100 F. Supp.3d 232, 255 (E.D.N.Y. April 23, 2015). Pursuant to that framework, a plaintiff opposing summary judgment must demonstrate a prima facie case of discrimination as set forth above. The Court notes that the burden of showing a prima facie case is "not onerous." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Indeed, that burden "has been frequently described as minimal." Rodriguez v. Nassau County, No. 16-cv-2648, 2019 WL 4674766, at *10 (E.D.N.Y. Sept. 25, 2019) (quotations omitted).

Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the complained of action. Id. "Upon the defendant's articulation of . . . a non-discriminatory reason for the employment action, the presumption of discrimination arising with the establishment of the prima facie case drops from

12

the picture," and the burden shifts back to the plaintiff to "come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination." Id.

As recently set forth by the Second Circuit in a case where a plaintiff was required to show but for causation, to establish pretext "a plaintiff must establish that the employer's stated reason would not, alone, constitute a sufficient basis for pursuing an adverse action. In other words," it must be shown that "the employer's stated non-discriminatory reason is either false or inadequate to support the adverse employment action." Naumovski v. Norris, 934 F.3d 200, 214-15 (2d Cir. 2019); see also id. at 216 (stating that plaintiffs burden at the third stage of the McDonnell Douglas analysis is "to establish that discrimination played . . . a decisive role," i.e., that "a reasonable jury could find that Defendants would not have terminated [plaintiff] based on their stated reasons alone"); Clay, 2019 WL 4346446, at *12. Ultimately, the burden of persuading the trier of fact as to intentional discrimination remains with the plaintiff.  At the summary judgment stage, he must show that "the evidence, taken as a whole, is sufficient to support a reasonable inference that prohibited discrimination occurred." Clay, 2019 WL 4346446, at *12.

Often, the question of whether plaintiff meets the prima facie burden of demonstrating an inference of discrimination is "indistinguishable from the question of whether the employer's actions served merely as a pretext for some disguised discriminatory animus towards the plaintiff." Chioke v. Dep't. of Educ. of the City of New York, No. 15-1845, 2018 WL 3118268, at *7 (E.D.N.Y. June 25, 2018) (quoting Jimenez v. Donahoe, 968 F. Supp. 2d 609, 618 (S.D.N.Y. 2013)). Therefore, "[d]espite the elaborate process set up in McDonnell Douglas, Second Circuit case law makes clear that a court may simply assume that a plaintiff has established a prima facie case and skip to the final step in the McDonnell Douglas analysis, as

13

long as the employer has articulated a legitimate, nondiscriminatory reason for the adverse employment action." Id. (citation omitted). Ultimately, as noted, the question is whether the evidence relied upon in opposition to summary judgment allows a reasonable fact-finder to determine that defendant engaged in discriminatory conduct. Patacca, 2019 WL 1676001, at *6.

III.    Disposition of the Motion

As noted, Defendants argue that they are entitled to summary judgment on the grounds that Plaintiff is not disabled within the meaning of the ADA and that, even assuming such disability, Plaintiff fails to show an inference of discrimination and/or that his termination was a pretext for discrimination.

    A.    Disability

As to disability, the Court holds, in the context of summary judgment, that Plaintiff's Crohn's disease is, in fact, a disability. The mere fact that Plaintiff was able to work without accommodation does not lead to the automatic conclusion (as argued by Defendants) that Plaintiff is not disabled. Indeed, this is not a case in which Plaintiff alleges that he was denied an accommodation. Instead, his lawsuit is based upon the theory that he was subject to discrimination on account of his disability. The test for disability is not whether Plaintiff managed to perform his job – if that were the case then any person managing to perform their job without accommodation would not be disabled under the ADA. Instead, the test, as described above, is whether Plaintiff suffers from "a physical or mental impairment that substantially limits one or more [of his] major life activities. 42 U.S.C. § 12102(1). Moreover (and as also noted), the definition of disability under the ADA is to be "construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the terms of" the statute. 42 U.S.C. at § 12102(4)(A). Under these circumstances, the Court holds that, in the context of summary

14

judgment, Plaintiff alleges disability as required. Cf. De Figueroa v. New York, 403 F. Supp. 3d 133, 160 (E.D.N.Y. 2019) (noting the lack of dispute as to whether a plaintiff with Crohn's disease has adequately alleged disability).

The Court turns to discuss the remaining elements of the McDonnell-Douglas analysis, i.e., whether Plaintiff makes out a prima facie case of termination under circumstances giving rise to an inference of age discrimination, and whether, in light of Defendants' proffered reason for termination, Plaintiff can create an issue as to whether those reasons were a pretext for discrimination.

B.  Inference of Discrimination/Pretext

An inference of discrimination can be found in circumstances preceding adverse action, as well as facts showing the more favorable treatment of individuals outside the employee's protected group. Collazzo v. County of Suffolk, 163 F. Supp. 3d 27 (E.D.N.Y. 2016). "The standard for whether an inference of discrimination can be drawn is flexible and no specific type of proof is required." Id. Nonetheless, the "mere subjective belief that" plaintiff was a victim of discrimination is insufficient to support an inference of discriminatory conduct. Bethea v. JP Morgan Chase & Co., No. 15-CV-3544, 2019 WL 4805141, at * 8 (E.D.N.Y. Sept. 30, 2019) (internal quotations omitted). As noted, where a plaintiff can show an inference of discrimination, the burden shifts back to plaintiff to show that "the employer's stated non-discriminatory reason is either false or inadequate to support the adverse employment action." Naumovski, 934 F.3d at 214-15.

Plaintiff has not, as described above, submitted a Rule 56.1 statement. He is therefore deemed to have admitted the statement (contained in Defendants' Rule 56.1 statement) that he was "terminated for poor work performance." DE [21-1] at ¶ 23. Nonetheless, in an effort to

15

support his burden of showing an inference of discrimination and/or pretext, Plaintiff submits and relies on his own personal affidavit, as well as the sworn statements of Hernandez, Sanchez and Pollack. DE [21-8]. In his affidavit, Plaintiff states that Maragos knew of his disability because, two years prior to his employment, Plaintiff met Maragos at a breakfast where Plaintiff refused to eat meat with his eggs, explaining that due to his Crohn's disease he could not eat meat. Genova Aff. at ¶ 2. While it may not be likely that Maragos remembers this incident, even if it did occur, the Court would have little difficulty concluding that Defendants knew of Plaintiff's disability. Such knowledge need not arise out of any request for accommodation, but may arise, as here, from knowledge that Plaintiff took leave in order to care for conditions related to his Crohn's disease.

     Defendants' knowledge of Plaintiff's disability, standing alone, is certainly not sufficient to support a prima facie showing of an inference of discrimination. In possible recognition of this fact, Plaintiff relies upon information he states he acquired after he was terminated. That knowledge is set forth in the letter of his co-worker, Hernandez. Hernandez states that "as far as Mr. Maragos' view of Mr. Genova and other employees in general, [Maragos] considered having an illness as a weakness. He would verbally express his lack of patience or need for individuals who could not work at a moments [sic] notice including holidays or weekends." DE [21-8] at 25. Hernandez further states that Maragos viewed Plaintiff as an "unreliable employee outside of scheduled work hours." Id.

     The information set forth in the Hernandez letter is insufficient to raise an inference of discrimination. It includes nothing more than the opinion of Hernandez that Maragos was not pleased with workers who were unavailable on a moment's notice and/or to work on holidays. This statement could easily apply to all workers unwilling to work outside of regularly scheduled

hours. Other than the unsupported conclusion that Maragos viewed illness as a weakness, the letter says nothing about disability discrimination. Importantly, the statement contains no information about Maragos' attitude toward Plaintiff. Nor does the temporal timeline between Plaintiff taking leave for his illness and his termination establish an inference of discrimination. Thus, Plaintiff was not terminated until eight months after he returned from his hospitalization, a period of time well after preparation of Plaintiff's reports, and Maragos's evaluations thereof. Nor do the affidavits of Sanchez and Pollack create an inference of discrimination. These affidavits, as discussed below, take issue with Maragos's opinion regarding the quality of Plaintiff's work, and say nothing about discrimination. For the foregoing reasons, the Court concludes that Plaintiff has failed to make a prima facie showing of an inference of discrimination.

Even if Plaintiff's opposition to summary judgment was enough to support a prima facie showing of an inference of discrimination, and the burden thus shifted to Defendants to put forward a non-discriminatory reason for Plaintiff's termination, it is clear that they have. Defendants' motion shows that Plaintiff was terminated for poor work performance. Maragos' dissatisfaction with Plaintiff's work product on the Reports is clearly set forth in documents properly before the Court. Plaintiff acknowledges, as he must, that he was tasked with writing the Reports. Plaintiff further acknowledges that Maragos considered Plaintiff's Surplus Property Report to have been "totally insufficient" and "skimpy." Maragos Aff. at ¶ 12. As the emails referred to above demonstrate, Maragos was also critical as to Plaintiff's Abandoned Homes Report. Maragos's displeasure with Plaintiff's work establishes a non-discriminatory reason for Plaintiff's termination. Plaintiff cannot dispute this fact. Nor can Plaintiff dispute that he was an

17

at-will employee who was hired by Maragos, who had the authority to terminate Plaintiff for what he determined to be poor performance.

Knowing these facts, Plaintiff relies on his own opinion regarding the quality of his work product. He also relies upon the Hernandez letter, and the Sanchez and Pollack affidavits to support his argument that the proffered reasons for his termination were a pretext for discrimination. See Genova Aff. DE [21-9] at 49-53. These documents do nothing of the kind. Taken together, the overall theme of Plaintiff's argument regarding discrimination is that the work he performed in connection with the Reports could not have been the reason for his termination because that work was well-done.

Plaintiff's affidavit compares his own experience in the real estate field with that of Maragos, pointing out that Maragos's "background as an electrical engineer did not assist him in any respect whatsoever" in evaluating the problems addressed by the Reports. Genova Aff. DE [21-9] at 1 ¶ 12. Plaintiff characterizes Maragos's criticisms of the Reports as "ridiculous." Id. at ¶ 13. Essentially, Plaintiff compares his professional background with that of Maragos, stating that Maragos was totally unfamiliar with the subject matter of the Reports and that therefore, Plaintiff knew best.

Like Plaintiff, Hernandez sets forth an opinion that Plaintiff's work on the Reports was excellent. DE [21-9] at 53. Sanchez, a New York State Licensed Realtor and Broker, and Pollack, a real estate attorney both submit their opinions as to Plaintiff's work on the Reports. DE [21-9] at 49-52. Sanchez concludes that Plaintiff's work product contained "abundant detail, notable facts, tables of data and comprehensive recommendations that would be of benefit [ ] to the residents of Nassau County." DE [21-9][ at 49. Sanchez further states that his "recommendation" that "the Nassau County government take into consideration the analysis and

facts described in both of Mr. Genova's reports" and that those reports "continue to have relevance within Nassau County and can be of benefit" to its residents. DE [21-9] at 50. Like Sanchez, Pollack expresses his positive opinion of Plaintiff's work, and concludes that all County officials should review the Reports. DE [21-9] at 51-52.

At best, the documents submitted to show pretext do nothing more than show disagreement with Maragos's conclusion regarding the quality of Plaintiff's work. Maragos found such work substandard; Plaintiff, Hernandez, Sanchez and Pollack find that work to be excellent. Importantly, Plaintiff's work product was not directed toward Hernandez, Sanchez or Pollack. Their opinions as to the usefulness or comprehensive nature of Plaintiff's work product do not show pretext; they show only a difference of opinion regarding a question of business judgment. That difference of opinion is insufficient to show pretext. See Greene v. Brentwood Union Free Sch. Dist., 966 F. Supp. 2d 131, 156 (E.D.N.Y. 2013) (stating that a court considering preferred evidence of pretext is not a "roving commission to review business judgments"). Moreover, these differences of opinion do not establish that the reasons stated for Plaintiff's termination were either "false or inadequate" to support Maragos's decision to terminate Plaintiff. Naumovski, 934 F.3d at 214-15; see also id. at 216. Under these circumstances, no reasonable juror could find that Plaintiff would not have been terminated based upon the stated reason alone. Accordingly, Defendants are entitled to summary judgment dismissing Plaintiff's claims.

## RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that Defendant's motion for summary judgment, appearing as Docket Entry [21] herein, be granted in its entirety.

OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals.  Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

**SO ORDERED.**

Dated:  Central Islip, New York
        December 26, 2019

                                                    /s/ Anne Y. Shields
                                                    Anne Y. Shields
                                                    United States Magistrate Judge